IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-cv-621-BO

| | |
|---|---|
| MOHAMMED IMAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| CUMBERLAND COUNTY, NC, | ) |
| | ) |
| Defendant. | ) |

This cause comes before the Court on defendant's motion for summary judgment. [DE 22]. For the reasons discussed below, defendant's motion [DE 22] is DENIED.

## BACKGROUND

In 2002, plaintiff began employment in defendant's Information Services Technology Department ("IT department"). DE 27-2, ¶ 1. As a Systems Programmer, plaintiff was responsible for back-end system-related functions for defendant's mainframe server, making sure server applications ran properly. DE 27-1, ¶ 5. Plaintiff was able to perform his tasks remotely, and as a result, he often telecommuted from his home in Raleigh, North Carolina. *Id.* ¶¶ 9–11.

In March 2016, plaintiff met with his immediate supervisor to discuss an IT modernization plan that would move applications off the mainframe. DE 27-2, ¶ 3.

On August 11, 2016, plaintiff's physician, Dr. David Adams, diagnosed him with deep vein thrombosis ("DVT") in his right leg. *Id.* ¶ 5. On August 16, 2016, Dr. Adams sent defendant a letter stating that plaintiff had been diagnosed with DVT and requesting that plaintiff be

permitted to work from home for two weeks until the blood clot in his leg stabilized. DE 27-1, ¶ 19. Defendant granted plaintiff's request. *Id.* ¶ 21.

On September 6, 2016—following the conclusion of Dr. Adams's telecommuting request—defendant proposed a modification to defendant's job description, adding "operational duties." *Id.* ¶¶ 29–30. Operational duties could not be performed remotely, but only required about one or two hours of work each day to complete. *Id.* ¶¶ 24, 26. This was the first time defendant told plaintiff of his new responsibilities. *Id.* ¶ 30. At the time of the proposed modification, two Cumberland County employees were responsible for the operational duties, and there were other employees trained on how to complete them. *Id.* ¶ 27–29. Plaintiff refused to accept the new responsibilities because of his workload and DVT. *Id.* ¶ 31.

On September 15, Dr. Adams sent another letter to defendant advising that plaintiff's DVT had additional complications and requesting that defendant permit plaintiff to telecommute for an additional two to three months. *Id.* ¶ 32. Defendant refused this request, indicating that plaintiff's new job functions required him to work on-site daily. *Id.* ¶ 33.

On October 20, plaintiff met with his supervisors and human resources personnel to discuss the operational duties and his objections to them. *Id.* ¶ 34. On October 24, defendant again denied plaintiff's request that he work remotely because of the operational duties, which defendant indicated comprised 30% of his duties. *Id.* ¶¶ 34, 35. Defendant's IT director informed plaintiff that he was expected to report to work on November 3. *Id.* ¶ 36. After plaintiff failed to do so, a pre-disciplinary conference was held on November 9, and plaintiff was terminated on November 14. DE 27-2, ¶ 24.

Following plaintiff's termination, the employees who had been performing the operational duties continued to do so for an additional six months, at which point the duties transitioned to two other employees already on staff. DE 27-1, ¶ 38.

In December 2017, plaintiff brought claims for discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. DE 1. The Court denied defendant's motion to dismiss under Rule 12(b)(6) in October 2018. Discovery ended on June 28, 2019. Defendant now moves for summary judgment. DE 22.

## DISCUSSION

Summary Judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

In determining whether a genuine issue of material fact exists, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the

outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quotations and citations omitted).

*ADA Discrimination*

To establish his claim for disability discrimination, plaintiff must prove (1) that he has a disability, (2) that he is qualified for the employment in question, and (3) that he suffered adverse employment action because of his disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (quotations omitted).

Here, genuine issues of material fact exist as to whether defendant took adverse employment action against plaintiff—by changing his job responsibilities and terminating his employment—because of his disability. In mid-August 2016, Dr. Adams advised defendant that plaintiff had been diagnosed with DVT, which "could cause extension of the close, pulmonary embolism and even death[,]" and that he needed to avoid commuting for it to stabilize. DE 27-1, ¶ 19. Defendant granted the request, but almost immediately following plaintiff's return, defendant changed plaintiff's job description and added responsibilities requiring him to be on-site. "[C]lose temporal proximity weighs heavily in favor of finding a genuine dispute as to causation." *Jacobs*, 780 F.3d at 575.

When Dr. Adams requested a second time that plaintiff have time off from commuting because of complications with the DVT, defendant refused to accommodate plaintiff, stating that his responsibilities had changed. Plaintiff's employment was ultimately terminated when he did not show up on-site. DE 27-2, ¶ 24. Defendant claims plaintiff was reassigned because the other staff were overburdened. DE 27-1, ¶ 24. Yet the same individuals who performed the operations responsibilities before they were assigned to plaintiff performed them for an additional six to seven months following plaintiff's termination. *Id.* ¶ 38. When they were ultimately reassigned, they

4

were assigned to other personnel already on staff. *Id.* Accordingly, there is a genuine issue of material fact as to both defendant's motivation for assigning additional duties to plaintiff—which led to his termination—and to the reason defendant could not accommodate plaintiff's second request for additional telecommuting.

*Retaliation*

To state a claim for retaliation under the ADA, plaintiff must show (1) he engaged in protected activity and, (2) because of this, (3) the employer took an adverse employment action against him. *Jacobs*, 780 F.3d at 577. Plaintiff engaged in protected activity by requesting accommodations for his DVT. Shortly after the first request, plaintiff was assigned on-site duties, and after the second request, plaintiff was terminated. The temporal proximity and the fact that other employees continued to perform the operational duties for an extended period of time after plaintiff's termination creates a genuine issue of material fact as to the reason defendant took these adverse employment actions against him.

## CONCLUSION

For the above reasons, defendant's motion for summary judgment [DE 22] is DENIED.

SO ORDERED, this __6__ day of November, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE